ORIGINAL

W.A. Griffin, MD
Pro Se
550 Peachtree Street N.E.
Suite 1490
Atlanta, Georgia 30308
(404) 523-4223
wagriffinerisa@hotmail.com

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 1 6 2015

JAMES N, HASAEN, Clerk
BY: _____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

AT

| | |
|---|---|
| W.A. GRIFFIN, MD | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) |
| | ) |
| | ) |
| SUNTRUST BANK, INC. | )   Case No.: |
| | ) |
| | ) |
| | )  **1:15 - CV - 0147** |
| | ) |
| | ) |
| Defendant, | ) |

---

## COMPLAINT

---

## INTRODUCTION

PLAINTIFF W. A. Griffin, M.D. alleges against Defendant as follows:

## I. JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant 28. U.S.C. 1331, because the action arises under the laws of the United States, pursuant to 29 U.S.C 1332(e)(1), because claimant seeks to enforce rights under the Employment Retirement Income Security Act ("ERISA").


2.    This Court is the proper venue for this action pursuant to 28 U.S.C. 1319(b) because of the substantial part of the events or omissions giving rise to the claims alleged herein occurs in this Judicial District, and because the Defendant conducted and continue to conduct a substantial amount of business in this Judicial District; and pursuant to 29 U.S.C 1132(e)(2) it is the Judicial District where the breach took place.

## II. THE PARTIES

A.    PLAINTIFF

3.    W. A. Griffin, MD  is a resident of Fulton County, Georgia and lives at 325 Sinclair Avenue N.E. Atlanta, GA 30307.  Plaintiff, as a condition of service, requires patients to assign his or her health insurance benefits to the Plaintiff. Plaintiff received an assignment of benefits for the claim at issue in this litigation.

Plaintiff has standing to pursue the claims for relief in this Complaint as an assignee of the member's benefits under the health plan, as a party who suffered injury in fact and loss of money and/or property as a result of the Defendant's conduct, and as a party who rendered services to the plan member with prior knowledge by the Defendant without being properly compensated for the fair market value of those rendered services.

B.    Suntrust Bank, Inc. / ERISA Plan Defendant

4.    Plaintiff is informed and believes that Defendant Suntrust Bank, Inc. is a corporation duly organized existing under the laws of the State of Georgia, and is authorized to conduct business in the State of Georgia.    Defendant Suntrust Bank, Inc. can be served with process through its registered agent at Corporation Service Company located at 303 Peachtree Street N.E. Atlanta, Georgia 30308. Plaintiff is informed and believes that Defendant Suntrust Bank, Inc.

(*Hereafter Suntrust*) is the plan administrator and sponsor of the present case. Plaintiff is informed and believes Suntrust's health plans are ERISA plans, thus making them proper defendants pursuant to ERISA § 502(d), 29U.S.C.§ 1132(d), and liable for unpaid services and penalties

C.    Blue Cross Blue Shield Healthcare Plan of Georgia

5.     Blue Cross Blue Shield Healthcare Plan of Georgia, in their capacity as the claims administrator and "party in interest" as defined under 29 USC 1002(14)(a). The Plaintiff believes Blue Cross Blue Shield Healthcare Plan of Georgia's principal place of business is located at 3350 Peachtree Street Atlanta, Georgia 30326. The Plaintiff is also informed that Blue Cross Blue Shield Healthcare Plan of Georgia does business as Anthem Blue Cross.

D.     Relationship Between Suntrust Bank, Inc. and Anthem Blue Cross

6.     Suntrust entered into an administrative service agreement, whereby Anthem Blue Cross has agreed to act as the claims agent of the ERISA Plan Defendant, has actual or ostensible authority to act on Suntrust's behalf for: providing plan documents to plan members; communicating with plan members and healthcare providers, such as Plaintiff; verifying member benefits and eligibility to providers, such as Plaintiff; interpreting plan terms and provisions; receiving Plaintiff's claims and appeals; approving of denying claims and appeals; pricing Plaintiff's claims; approving or denying appeals; interpreting ERISA plan documents; determining how and where to pay Plaintiff's claims; issuing claim status reports and explanation of benefits; making and administering payments. Ultimately, it is the Plan administrator's duty to oversee that all the employee benefit contractors such as Anthem Blue Cross uphold its fiduciary obligation to

process employee claims in the best interest of the member. The *back* of the member's insurance card relative to this case specifically reads:

> **Anthem Blue Cross and Blue Shield is the trade name of Blue Cross and Blue Shield of Georgia, Inc., an independent licensee of the Blue Cross and Blue Shield Association and Provides administrative claims payments services only and does not assume financial risk or obligation with respect to claims.**

### III.  ALLEGATIONS RELEVANT TO THIS CLAIM

7.    It is standard practice in the health care industry that when a provider, such as Plaintiff, enters into a written contract with a health plan, such as Anthem Blue Cross, the provider agrees to accept reimbursement that is discounted from the provider's billed charges in exchange for the benefits of being a "contracted provider" (i.e., a provider with a written contract with the plan). These benefits include an increased volume of business because the health plan provides financial and other incentives for its members to receive their medical care at the contracted provider, advertises that the provider is "in-network", and allows members to pay lower co-payments and deductibles to use the contracted provider.

8.    Conversely, when a provider, such as W. A. Griffin, M.D, does not have a written contract with a health plan, the provider receives less business from the plan, as the health plan discourages its members from receiving their

care from an out-of-network provider. The health plan is not entitled to a discount from the provider's billed charges because it is not providing the provider with the benefits of an increased patient volume that result from being an in-network provider.

9.    In recent years, Anthem Blue Cross' contracts have demanded such low rates and have become so onerous and one-sided in favor of Anthem Blue Cross, that many providers like W. A. Griffin, MD, have determined that they cannot afford to enter into such contracts with Anthem Blue Cross. As a result, a growing number of providers have become "non-contracted" or "out-of-network" with Anthem Blue Cross. This "out-of-network" trend is not common in Georgia but very common in states like California, New York, and New Jersey.  In Georgia, ninety seven percent of providers are in-network with Anthem Blue Cross.

10.   Even with this handful of non-contracted claims in the metro Atlanta area, Anthem Blue Cross has drastically underpaid the Plaintiff for the medically necessary services provided to members. Anthem Blue Cross has used flawed methodologies that unilaterally fail to comply with the provisions of the members' insurance contracts, ERSIA plans, Summary Plan Descriptions ("SPDs") or Evidence of Coverage ("EOCs") for calculating payments to non-contracted providers, do not comply with legal standards

and generally accepted industry standards for calculate payments to non-contracted providers, and results in payments which are not reasonable. Instead, these flawed methodologies unfairly and illegally shift the burden and expense of payment to the patients and force non-contracted providers to balance bill their patients for sums which are legally owed by the Defendant.

11.    These low payment schemes to non-contracted providers have an adverse economic impact and hurt many small businesses like the Plaintiff who have already taken a decline in patient volume in exchange for out of network services.

12. The Plan administrators of this self-funded plan have failed to put a leash on these abusive and negligent techniques implemented by their claims  administrators such as Anthem Blue Cross.

13.    The Plaintiff has all members sign a financial statement that specifically states that  each billed procedure code for the geographic area is consistent with the usual customary and reasonable benefit level (*hereafter UCR*) for out-of-network providers. Currently, the Plaintiff is a licensed user of a national database called Fair Health Inc., which provides hospitals, physicians, insurance companies, and self-funded plans with the UCR data for procedure and billing codes used for out-of-network services. Most

reputable plans honor the UCR data presented by Fair Health Inc. Other terms for UCR are "maximum allowable "or "prevailing rate".

## IV. EMERGENCY SERVICES COVERAGE

14.     Emergency Services are covered under the Affordable Care Act even if the services were received in a private office setting (i.e., place of service). In Plaintiff's specialty, dermatology, providers are consulted to the emergency department for acute dermatitis, rashes, infections, ulcerated masses, cellulitis  and any other skin condition that require immediate attention from a *prudent layperson* standard.

15.     Prudent layperson is a well-recognized consumer protection involving the assessment of urgent medical treatment. Under this standard, a condition will qualify as needing "urgent" care if the medical condition manifests itself "by acute symptoms of sufficient severity (including severe pain) such that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in harm.

16.     Under this standard, insurance companies can be restricted from establishing a list of certain signs and symptoms which cannot be treated in the emergency room. Also, the same regulations require that a plan or health insurance coverage providing emergency services must do

so without the individual or the health care provider having to obtain prior authorization (even if the emergency services are provided out of network) and without regard to whether the health care provider furnishing the emergency services is an in-network provider with respect to the services.

17.     The plan or issuer may not impose any administrative requirement or limitation on benefits for out-of-network emergency services that is more restrictive than the requirements or limitations that apply to in-network emergency services.

18.     Additionally, Cost-sharing requirements expressed as a copayment amount or coinsurance rate imposed for out-of-network emergency services cannot exceed the cost-sharing requirements that would be imposed if the services were provided in-network. For example, if patient Jane Doe went to an in- network emergency department and her insurance required her to pay a fifty dollar copayment, patient Jane Doe would have the same out of pocket expense, fifty dollars, at an out-of-network emergency department *if* the plan followed the Affordable Care Act regulations for the three dollar amounts that  the plan should have  considered for emergency services.

19.     Specifically, a plan or insurer satisfies the copayment and coinsurance limitations in the statue if it provides benefits for out-of-network emergency

services in an amount equal to the *greatest* of three possible amounts –

> **(1)The amount negotiated with in-network provider for the emergency service furnished;**
> **(2)The amount for the emergency service calculates using the same method the plan generally uses to determine payment for out-of-network services (such as the usual, customary, and reasonable charges) but substituting the in-network cost-sharing provision for the out-of-network cos-sharing provisions; or**
> **(3)The amount that would be paid under Medicare for the emergency service.**

## V. FACTS

20.    On December 23, 2013, B.W. presented to Plaintiff's office as a same day walk-in patient for medical treatment. B.W. had insurance coverage that  was limited to in-network providers. However, after evaluating the patient, Plaintiff established that B.W.'s complaint, symptoms, physical exam, and level of concern as a prudent layperson qualified his services for coverage under the Affordable Care Act mandate.

21.    Plaintiff marked the claim with a specific billing code (i.e cpt code 99058) that would notify the claims administrator that the services rendered in the *office* qualified for emergency services. Also, the cover letter of the claim specifically stated "Enclosed is an out-of-network claim for emergency services".

22.    The claim included a designated authorized representative form and a written legal assignment of benefits and was mailed to Anthem Blue Cross

by mail Certified Particle No. 7012 3050 0002 0475 1999.

23.　　On January 8, 2014 the claim processed. The UCR charges totaled $1,943.66. However, Plaintiff was denied payment because the services were not provided by an in-network provider. Plaintiff was paid $0.00.

24.　　On January 22, 2014 Plaintiff filed a level one ERISA appeal with Anthem Blue Cross to dispute the payment denial because the Affordable Care Act mandates payment for emergency services regardless of the provider participation services. Plaintiff included a request for a copy of the summary plan description, identification of the plan administrator including name, telephone number, and postal mailing address, and publications, database, and schedules used to determine the UCR charges for the plan in accordance with DOL Advisory Opinion, 96-14A. (**Exhibit A- redacted**)

25.　　Additionally, the level one ERISA appeal included a copy of Plaintiff's legal written assignment of benefit, medical records, Anthem-specific designated authorized representative consent, the Department of Labor Advisory Opinions, 96-14A & 97-11A and a specific request to forward the appeal document if Anthem was not the correct fiduciary.

26.　　This appeal was submitted by Certified Particle No. 7012 3050 0002 0475 1999 was received on January 27, 2014.

27.     On March 14, 2014,  Plaintiff contacted the Anthem to inquire about the level one appeal status. The appeal had been ignored and none of the requested documents had been received.  Plaintiff spoke to customer service and was told to "allow more days" for an appeal response. (reference #02140734513900 Chris E. 1.41P.M. 03-14-2014)

28.     That same day  Plaintiff filed a level two ERISA appeal that was submitted by Certified Particle No. 7012 2250 0002 2768 9149  and received by Anthem on March 18, 2014. The appeal requested payment for emergency services, demanded a full and fair review, and requested a copy of the summary plan description.

29.     On April 2, 2014 Plaintiff received an adjusted explanation of benefit dated March 25, 2014 with a *partial* payment of $909.37. The adjustment indicated that the original claim applied incorrect benefits. However, there was no additional   explanation as to why the claim was *still* underpaid. Anthem based the benefit payment on Medicare, not UCR. The correct payment  should have been $1, 843.68 which excluded the member's one hundred dollar out of pocket cost.

30.     Anthem ignored both level one and level two appeals and failed to send any of the requested plan documents.

31. On April 3, 2014 the Plaintiff sent Anthem a request for external

review by Certified Particle No. 7012 0150 0000 2435 5373  which

included a copy of the IRS bulletin: 2011-32 dated August 8, 2011 T.D.

9532 that **specifically** states that emergency services or urgent care are

eligible for external review by the independent review organizations. A

excerpt from that document reads:

> After considering all the comments, with respect to claims
> for which external review has not been initiated before
> September 20, 2011, the amendment suspends the
> original rule in the July 2010 regulations regarding the
> scope of claims eligible for external review for plans
> using a Federal external review process (regardless of
> which type of Federal process), temporarily replacing it
> with a different scope. Specifically, this amendment
> suspends the broad scope of claims eligible for the
> Federal external review process and narrows the scope
> to claims that involve (1) medical judgment (excluding
> those that involve only contractual or legal interpretation
> without any use of medical judgment), as determined by
> the external reviewer; or (2) a rescission of coverage.
> The more narrow scope under this amendment is more
> similar to the scope of claims eligible for external review
> under the NAIC Uniform Model Act. This amendment
> provides an example describing a plan that generally only
> provides 30 physical therapy visits but will provide more
> with an approved treatment plan. The plan's rejection of a
> treatment plan submitted by a provider for the 31st visit
> based on a failure to meet the plan's standard for medical
> necessity involves medical judgment and, therefore, the
> claim is eligible for external review. Similarly, another
> example describes a plan that generally does not provide
> coverage for services provided on an out-of-network
> basis, but will provide coverage if the service cannot
> effectively be provided in network. In this example, again,
> the plan's rejection of a claim for out-of-network services

involves medical judgment. Additional examples of situations in which a claim is considered to involve medical judgment include adverse benefit determinations based on:

- The appropriate health care setting for providing medical care to an individual (such as outpatient versus inpatient care or home care versus rehabilitation facility);
- Whether treatment by a specialist is medically necessary or appropriate (pursuant to the plan's standard for medical necessity or appropriateness);
- **Whether treatment involved "emergency care" or "urgent care", affecting coverage or the level of coinsurance**;
- A determination that a medical condition is a preexisting condition;
- A plan's general exclusion of an item or service (such as speech therapy), if the plan covers the item or service in certain circumstances based on a medical condition (such as, to aid in the restoration of speech loss or impairment of speech resulting from a medical condition);
- Whether a participant or beneficiary is entitled to a reasonable alternative standard for a reward under the plan's wellness program;[32]
- The frequency, method, treatment, or setting for a recommended preventive service, to the extent not specified, in the recommendation or guideline of the U.S. Preventive Services Task Force, the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention, or the Health Resources and Services Administration (as described in PHS Act section 2713 and its implementing regulations);[33] and
- Whether a plan is complying with the nonquantitative treatment limitation provisions of the Mental Health Parity and Addiction Equity Act and its implementing regulations, which generally require, among other things, parity in the application of medical management techniques.[34]

32.  To date, Plaintiff's level one appeal with document request has been ignored.

33.  To date, Plaintiff's level two appeal with document request has been ignored.

34.  To date, Plaintiff's external review request has been ignored.

35.   Plaintiff is owed an additional benefit payment totaled at **$999.29** excluding the member's liability and penalties for failure to comply with the summary plan description request (i.e., 323 days post first request, 273 days post second request).

35.  Plaintiff holds the plan administrator, Suntrust Bank Inc., accountable for the negligent, irresponsible claims handling, faulty appeals process, UCR cheating, and failure to submit the requested documents.

## VI.   CLAIMS FOR RELIEF

### COUNT ONE

## ENFORCEMENT UNDER 29 U.S.C.§ 1132(a) (1)(B) FOR FAILURE TO PAY ERISA
### PLAN BENEFITS

36.  Defendant has failed to fully pay or compensate Plaintiff's claims for treatments rendered to members of the relevant ERISA plan.  Defendants have

failed to pay/reimburse the Plaintiff under the ERISA Plan in accordance with the UCR standard on each of the claims at issue in this litigation.

37. Defendant breached the ERISA Plans' benefit provision by underpricing and underpaying Plaintiff for out-of-network services provided by Plaintiff to the member covered under the ERISA Plan.

38. This cause of action seeks to recover benefits, enforce rights and clarify rights benefits under 29 U.S.C.§1132(a) 1(B).

39. Defendant has intentionally miscalculated the UCR rate, systematically reduced benefits paid to Plaintiff for out-of-network services, as well as failed to provide a benefit determination and appeal process that provides for a full and meaningful review of the benefit claims and determinations.

40. The aforementioned statute authorizes actions against ERISA Plans administrators.

41. Therefore the named Defendant is proper for this claim. For said violations, Plaintiff is entitled to past due benefits and future benefits.

## COUNT TWO

### ENFORCEMENT UNDER 29 U.S.C. § 1132 (a) (2) FOR BREACH OF FIDUCIARY DUTY

42.     Plaintif3f alleges that Defendants violated ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), which allows Plaintiff, as an ERISA beneficiary, to bring a suit for relief under 29 U.S.C. §1109.

43.     Defendant served as the Plan administrator for the ERISA plan at issue, and owed the Plan and the plan members and beneficiaries a duty to act with undivided loyalty and prudence in the administration of the plan.

44.   Defendant breached its fiduciary duties by continuing to delegate duties to administer claims to Anthem Blue Cross even when it became apparent that Anthem Blue Cross was not qualified to do so, and in fact failed to correctly apply the ERISA plan language and manage properly the respective ERISA plan for the benefit of plan participants and beneficiaries.

45.     Defendant engaged in little to no oversight over Anthem Blue Cross to ensure that their claims administration services were compatible with the ERISA Plan language and requirements of the ERISA statute and regulations.

46.     Wherefore Plaintiff seeks to compel Defendant to honor the terms of the plan, by properly compensating Plaintiff, and cease committing willful breaches of their fiduciary duties.

## COUNT THREE

## DEFENDANTS FAILED TO PROVIDE PRODUCTION OF DOCUMENTS UNDER 29 U.S.C. §§ 1024(b), 1104, AND 1133(2), AND FOR STATUTORY PENALTIES UNDER 29 U.S.C. §1132 (c)(1)

47.   Pursuant to U.S.C.§§ 1024(b), 1104, and 1133(2), Defendants has failed to produce the "summary plan description… or other instruments under which the plan is established or operated."

48. Section 502(c)(1) of ERISA imposes a fine of up to $110 per day upon a plan administrator who "fails or refuses to comply with a request for any information which the administrator is required by this subchapter to furnish to a participant or beneficiary." *29 U.S.C.§1132(c)(1), §1133*

49. Wherefore, the Plaintiff requests that Defendant produce the requested documents and the Court impose a fine up to $110 per day for each day Defendant failed to provide the requested documents.

## COUNT FOUR

### DEFENDANT HAS COMMITTED A BREACH OF CONTRACT

Case 1:15-cv-00147-AT   Document 1   Filed 01/16/15   Page 20 of 20

50. Defendant breached the employee healthcare plan as contracted by the Plaintiff and Suntrust recognized under ERISA Section 502(a), 29 U.S.C. 1132(a), which requires a claim provide a full and fair appeals process. Defendant has, blatantly and in bad faith, breached their contractual obligations to the Plaintiff as recognized by ERISA.

**WHEREFORE**, Plaintiff prays for and demands judgment against the Defendant as set forth above and as follows:

A.       For Defendant to be found  liable;

B.       For a declaration that Plaintiff  is entitled to have Suntrust instruct

C.       benefit vendors to calculate UCR based on the  ERISA plan

D.       For damages in the amount of $999.29 for unpaid services, and

E.       $65, 560.00 in penalties to date, pursuant to Section 502(c)(1) of

F.       ERISA;

G.       For interest  at the applicable legal rate;

H.       For filing fees and cost;

This 16th day of January, 2015

W. A. Griffin, MD
Pro Se
550 Peachtree Street N.E. Suite 1490
Atlanta, Georgia 30308
(404) 523-4223

Page **19** of **19**